Good morning, everyone. I will start with the first case on the list, Malik Imari Ali v. Administrator NJ State Prison. May it please the Court, Your Honor, I'd like two minutes for rebuttal. My name is Kathryn Fadai. I'm a Special Deputy Attorney General acting Senior Assistant Prosecutor on behalf of the appellants. There's a change in the list. I'm sorry? Ms. Atkins, you said? Atkins? Special Deputy Attorney General? Yes. Acting Senior Assistant Prosecutor. Oh, okay. Because our prosecutor is only acting, that's why. Ms. Atkins, may it please the Court, this is a very unusual case in some respects. Judge Debevoise accepted the harmless error analysis of the appellate division with regard to Officer Santarpia and even with regard to Terrence Turrell for every count except one. And that was the knowing and purposeful murder count. With regard to that count, Judge Debevoise determined that the appellate division's decision of harmlessness was due no deference because they didn't take into account the fact that had the defense been able to cross-examine Turrell about his agreement to testify in the United States v. McGriff case and to serve his sentence, his state sentence, in federal prison, it may have made a difference to who was the shooter. In the jury's mind, it may have made a difference in whether Turrell or defendant was the shooter. Are you suggesting the federal court is not able to parse the counts that way? Isn't it, in fact, required to make a harmlessness determination on habeas as to each of the particular counts? I don't disagree with that, Your Honor. My point is that the reason the judge found that the harmlessness determination of the appellate division was an error was because he concluded that it was relevant to whether Turrell or defendant shot the victim. But under New Jersey case law and under the charges given in this case, it actually wasn't. Well, Turrell did, in fact, point the finger at Ali, didn't he? He did, Your Honor. Oh, he did. But he also admitted that he was there. He pled guilty to felony murder. So it's not as if Turrell didn't put himself there as a... Who pled guilty to felony murder? Turrell? Turrell did. Okay. Felony murder in the course of a robbery and kidnapping. He pled guilty to both of those charges. But does that mean that Ali should not have the opportunity to know that Ali had a deal with the U.S. attorneys in New York and that he was to get special treatment for his incarceration? He knew, Ali knew, defendant, I use that term, the defense knew that Turrell was talking to the U.S. attorneys about the McGriff case. They knew that and they knew that one of the things that he asked for was that he be allowed to serve his sentence, his 30-year New Jersey sentence, all without parole, in federal custody. Well, it sounds like specialized treatment. Don't you think that the jury should have the opportunity to know that? One of the things that came out at the remand, Your Honor, was that there was no agreement. That was one of the issues. Was there an agreement? There was no agreement. Was there an expectation? That he would get a deal, a special deal with the federal government? Yes. At the hearing, Your Honor, the assistant U.S. attorney testified. She made clear that she was the one, she was the one that because of circumstances arising in her federal case, wanted to have an agreement with Turrell. He never asked for an agreement. He never asked for an agreement. He never asked for immunity. That was her. But he asked to be in the federal prison. Yes, absolutely. That was really, in effect, a matter of life and death, wasn't it? For him it was. Yes, right. Yes, it was. And that's another reason why we believe it was harmless security. In fact, where is he serving his sentence? He's serving his sentence in a federal prison in the witness security program, Your Honor, which is not witness protection. It's witness security, which is individuals who are at risk, from my understanding, from the record. Why would a defendant think that, be able to cross-examine Turrell to show that his testimony favored the prosecution so that he could get the benefits of this deal? I don't think. It's a matter of life and death. I don't agree with you that, you know, I think the question that he was afraid if he went to New Jersey prison he would die. Yes. If he went to federal prison, he had a pretty good chance of surviving. Yes. And in order to save his life, he would say anything that he thought would help not only the feds but the New Jersey prosecutors because they could help him get the deal he wanted. That's not what was testified to at the hearing. But, you know, in a lot of these cases where you're dealing with special deals with prisoners, it's not always what is in black and white agreement. It's what is expected. It is what is behind the wink. Well, Your Honor, respectfully, the jury knew in this case, in this case, forget the federal immunity, which they call, which really was immunity. Because of his agreement, Turrell could have faced, and it was set out absolutely on the record by the defense counsel, both defense counsel, he could have faced, had he been convicted of the charges, a life sentence for the murder, 63 years without parole, an extended term on any of the many felonies that he was convicted of, which included kidnapping and armed robbery, which was another life term, 63 years without parole. Plus, given the fact that there were two victims in this case, he could have faced another 100 years. So the jury that convicted defendant and knew that Turrell had made a deal that saves him from two life terms plus 100 years, and for that, he got 30 years all without parole. So the jury that convicted him knew that Turrell had gotten a tremendous deal. How old was Turrell? I think he was in his 30s. Okay, so if you're in your 30s and you get a 30-year sentence, that's almost a life sentence. Well, it's better than two life terms plus 100 years. Yeah, but I mean, they aren't going to resurrect you and have you serve the second term, are they? I agree, Your Honor, but if the entire argument is that the jury should have known that he was not going to be prosecuted for his federal offense, then they already knew that he had, because of the deal that was out there for the jury to consider, he had already reduced his possibility of two life terms plus 100 years to 30 years without parole. Yeah, but I mean, what's the big difference between two life terms and 30 years when you're in your 30s? I think a lot. I mean, I think that the fact that you might be able to get out when you're in your 60s as opposed to knowing you're going to die in prison is pretty good. I think that's a pretty good inducement, and that's what the jury knew. Does the length of the sentence really affect the right to confrontation? No, Your Honor, it's not that. It's the fact that one of the things that was argued and what Judge Debevoise found was that the jury believed that Terrell had a sweet deal but didn't know how sweet it was because it was only 30 and 30, and they didn't know that he was facing a life term if he was convicted on federal charges, which, by the way, he had not yet made the agreement. But the counter to that is they already knew how sweet the deal was because they already heard that he had, instead of having two life terms plus 100 years, it had already been reduced to 30 years without parole. Just to address that question, I just wanted to, one more question. What the jury did not know was that he was going to serve a sentence in federal office. That's right, Your Honor. Can you say that? No, it's harmless error because of the other circumstances that they knew about Terrell. And also, Your Honor, one of the circumstances which came out at both the hearing and before was that the reason he wanted to serve in his sentence in federal custody was because he was afraid of two people, and one of those people was the defendant. So how does that help the defendant to let the jury know, you're going to serve, you want to serve your sentence in federal prison, yes. Why do you want to serve your sentence in federal prison? Because I'm afraid of two people, one who's on trial for death penalty in New York and the defendant. Realistically, people who serve as witnesses against co-defendants have a problem more than two people. That's true, Your Honor. I'm sorry. I just want to say in answer to that, one of the circumstances that came out at the hearing was that Terrell had complained about defendant early in the process. He had said that Terrell had called, I'm sorry, Terrell had said that defendant had called his mother and told his mother to tell Terrell not to testify. So that's not something that came later. That was something that was apparent to him from the beginning. Yes, Your Honor. Ms. Food, I think we can take as a given that there's additional impeachment value in at least his expectation about how his cooperation with the federal government might affect his sentence in prison term. And let's assume error. That brings us back to what is the test, what is the standard that we ought to be using? And we had asked for a supplemental briefing on this question, and I'd appreciate if you can help us work through. After Ayala, where the Supreme Court said that federal courts do need to consider the state court's harmless error determination, what does that consideration mean? And we've been told you don't have to do both an Edput-Chapman and a Brecht review. But at the same time, the Ninth Circuit was certainly taken to task for not undertaking something like an Edput-Chapman review. And the instruction is to consider the state court's decision. How should we go about considering it here? I think in one of the cases I found, Your Honor, it said that you should give due consideration to the reasons the appellate division found it harmless. What were the reasons that the appellate division gave? Having looked at the entire record, the appellate division gave various reasons for why it was harmless. It talked about the overwhelming evidence of defendant's presence, the DNA, the use of the caravan, the fact that his wallet, his keys were found in the caravan. The keys found there were to the navigator, which is what defendant used. So you look at all the other evidence, and the fact that the jury knew a lot about Terrell. He was in some ways, I think, a difficult witness for the defense because he was what he was. He never pretended to be at all embarrassed by what he did. He never pretended to be remorseful. He had a long record. The jury knew that the first thing he did from when he got out of that car was try to make a deal. They knew he was inconsistent. They knew all of that. And yet, that other evidence as well, not only put defendant there, but put him as an integral part of this case. Are you suggesting that we undertake a separate AEDPA-Chapman review, or that that is something that's subsumed within a Brecht analysis and we proceed with a Brecht analysis? I think what the court said is you can either do AEDPA and Chapman, or you can do Brecht. But one of the things you have to do is you have to say, obviously, was it an unreasonable application of United States Supreme Court case law that the appellate division did? The appellate division applied the correct law. It knew the case that it had to apply. It knew the factors that it had to address, and it addressed each one of them. You mean Chapman and Van Arsdale? I'm sorry? Chapman and Van Arsdale? And Van Arsdale. It used both of those. It said it was the state's obligation. You have to prove to us beyond a reasonable doubt. We are going to, and here are the five factors that Van Arsdale tells us to look at. They looked at all five factors. And to a great extent, again, Judge Deveboise agreed with them, except for the first-degree murder count, because he believes it was relevant to a finding of who was the shooter. And under New Jersey law, as we've set forth, it is irrelevant. The jury had, they knew that he could be convicted as a principal, co-conspirator, or accomplice. And they knew that. And so it really didn't make any difference who did the shooting, because it just had to be that they found that he intended to, as one of those three, to commit knowing and purposeful homicide. He was actually convicted of 16 separate offenses. Do you know how long the jury deliberated in this case? I don't, Your Honor. I know that they had some questions. You say that if we somehow disagree with you on the confrontation issue, we can still find that the jury properly convicted him of felony murder. Is that correct? Oh, yes, Your Honor. That's one of the things, because Judge Deveboise, throughout his opinion, said there was absolutely no, he had no issue with the appellate division's determinations on the Santarpia case because there was overwhelming evidence that the defendant was involved in the case, that he was in the house. But isn't felony murder reliant on the testimony of Terrell? It's relying on the testimony of Terrell and the testimony and the other inferences that were involved in the case. It's also true, Your Honor, that even though Mary Johnson could not identify, she's the surviving victim, even though she couldn't identify the defendant, she gave a description of him which was similar. She could identify Terrell because Terrell, as she said, I don't live here, I don't care if anybody sees me. She identified the person. He was about the same weight and height as the defendant. He had the hoodie on. Like a veil. It was a hoodie with a mesh that came down. After they ran out of the house, two people ran out of the house into a van that had its lights off, which took off, which meant that there were three people involved. So we know that there were two people in the house, and she testified that both of those people participated in the kidnapping and the robbery. She was handcuffed, the victim was, the dead victim was handcuffed. So there was tremendous evidence on the felonies. And Holmes could not be involved in the investigation? Holmes could not. Holmes could not because Holmes was identified as being larger and having braided hair. I've got to get you back. But basically you say that even though we find a constitutional confrontation violation, we could find, based on the evidence, we can find felony murder. Is that your view? Well, we think, yes, Your Honor. We think that what Judge Debevoise did was say, I have concerns about the knowing and purposeful homicide. He didn't say, and he didn't have concerns about any other conviction. Did you argue any other conviction to the district judge? I asked the district judge to modify his order to, I asked him whether he would clarify it so that we could, in fact, go back and vacate the first-degree murder charge, and that way that would resurrect the felony murder convictions. And that is also one of the things that we're asking the court to do. If it finds that this was harmful error, we would ask that we be given the opportunity to either vacate the first-degree murder charge, retry, or release. We'll get you back on your rebuttal. Mr. Smith? Thank you, Your Honor. Good morning, Your Honors. James K. Smith, Jr., Assistant Deputy Public Defender, appearing on behalf of Malik Amiri Ali. Your Honors, the New Jersey State Court found that there were two constitutional violations in this case, violations of the Confrontation Clause relating to Terrence Terrell and Officer Santarpia. The issue before this court is harmless error. The petitioner has basically two burdens. First of all, we have to show that the state court decision of harmless error was itself unreasonable, and we have to show that the petitioner suffered actual prejudice. This is a highly deferential standard. We have to apply the Brecht test and show that the error had substantial and injurious effect or influence in determining the jury's verdict. After Ayala, don't we really need to look first to the prerequisite that the court identified of the reasonableness of the state court's harmless error determination? Yes, you do, Your Honor. And here, the state court identified both Chapman and Van Arsdale and went through quite carefully and in detail the Van Arsdale factors. I don't say that they misinterpreted harmless error law as it related to Chapman v. California. What I'm saying is their reasoning for finding harmless error was unreasonable in itself. They gave two reasons for finding harmless error as it related to Terrell. First of all, that his testimony was cumulative, and second of all, that there was formidable evidence of petitioner's involvement in the crime. Now, as to the argument that somehow this evidence was cumulative, that is completely unsupported by the record. The fact is that there were really two confrontation violations as it affected Terrell. The first one was that defense wasn't allowed to ask him about the fact that he had this deal to serve his New Jersey state sentence in a federal institution, and it later turned out that what he was really seeking was the witness security program. The second thing was that defense was not allowed to question Terrell about his cooperation with federal authorities in the Kenneth McGriff prosecution, and it turned out that, in fact, that case involved a whole lot more than just the prosecution of Kenneth McGriff. In fact, there was a multi-state drug operation. Mr. McGriff ran the New York part of it. The Maryland part of it was run by a guy named Billy Guy. Mr. Terrell was the chief lieutenant for them. So this particular drug operation was the subject of investigations not only by the FBI, but also by the Maryland and New York police. He cooperated with all of those authorities. What happened was shortly after his arrest, he in fact sought out a Baltimore detective and said that he wanted the deal. So a few months, a few weeks later, he was testifying in front of a federal jury. But there was evidence that he wanted the deal. Sure. And the fact that he wanted the deal and that his testimony might be affected by wanting to deal and wanting to please the authorities was well laid out to the jury. The testimony was that he wanted to deal with the state authorities. Nothing came in about the federal authorities. Nothing whatsoever came in about that. The federal authorities had nothing to do with the case before the jury. Except as to Mr. Terrell's credibility. Right. And his credibility was attacked in the regard that he was a guy who liked to deal to get his sentence down. And that was presented to the jury. So isn't more evidence of that simply cumulative? No. I would, first of all, cite this court's opinion in Lambert v. Wetzel, where this court said it is patently unreasonable to presume without explanation that whenever a witness is impeached in one manner, any other impeachment becomes immaterial. Certainly there is always a tipping point, a point where you just say, I can't believe this guy anymore. And if the jury did not believe Terrell, then what they have is evidence that Terrell and Petitioner left Maryland together and nothing at all after that until Officer Santarpia says that she saw Petitioner run from the van. That's not quite true, is it? I mean, Terrell had identified Ali as holding the MAC-10. That's if they believe Terrell. If they take the position that we can't believe anything that Terrell said, then they have this huge gap in their case. There's DNA evidence on the sweatshirt that was in the van with the victim's blood. The Petitioner's wife was a client of the victim, had been in the home. Understand that I do not at all disagree with the state court finding that there was evidence that Petitioner was involved in this case. My position is that it is unreasonable to suggest that there was harmless error here in that a jury would have convicted him of purposeful or knowing murder simply because he was, quote, involved in the case. Well, you know, the state takes a different position because we're focusing on Terrell's testimony with regard to murder inside the apartment. But speaking of the evidence that the government found, the evidence involved in the van, the escape van, that van was leased by Ali's wife, estranged wife, and inside the van was his wallet, his license. The fruits of the crime were in the van, as well as a garment, a piece of clothing, yes, that had DNA that fit Ali's profile, so it seemed pretty clear that he was inside that van. Well, absolutely. And then take it a little bit further. Then the van takes off, apparently Holmes is the driver. There stopped a few, oh, I'm sorry, inside the van is also a set of car keys belonging to Ali's personal vehicle. Then we know that he runs into his estranged wife, I'm sorry, it's not his estranged wife, his girlfriend, and he says to her, I think there is trouble, and he flees to Georgia. Now, the judge did give a flight charge. The jury considered flight on whether or not he should be, he is culpable. Now, all of that evidence has nothing to do with Turell. So isn't the state right that they have properly presented charge of robbery? No, because being inside the van is totally different than being inside the house. Well, that's fine. Holmes wasn't inside the house, was he? He was convicted of robbery. Right, but he was found not guilty of purposeful murder and felony murder. Why can't you be convicted as an accessory to robbery? That's certainly, the petitioner could have been. As a matter of fact, he was convicted of two robberies. Well, he could have been convicted, I suppose, perhaps based upon this evidence that he was involved in the robbery. I'm just saying, I don't know that Turell's testimony was necessary for all of these convictions. There were 16 separate convictions. Absolutely it was necessary, because if the jury did not believe that he was in the house, then they could not have convicted him of purposeful murder. Well, we're not the jury here today. We are reviewing the appellate division's review of the confrontation clause issue. And you have agreed with us that they looked at the proper factors. You don't agree with the conclusion they came to. But if they came to a reasonable conclusion, the fact that I might come to a different conclusion under EDCA is irrelevant, isn't it? Well, if it's a reasonable conclusion, but my position is it is unreasonable for the reason I said before. You can't convict a person of purposeful murder based solely on the fact that he's involved in something. If under New Jersey law, if he didn't go into the house, he could not have been convicted of purposeful murder because there was no plan in advance to commit a murder. The plan was to commit a robbery, so he could have been the principal, and he could have been an accomplice to the shooting. He could have only been a conspirator. And the only evidence as to the conspiracy was the testimony of Terrence Giroir. I think you're arguing to us as to a jury, not as to the irrationality of what the appellate division did. Well, that's my mistake, Your Honor, but what I'm arguing on the basis of is New Jersey law. And I'm saying under New Jersey law, which the state does not disagree with anything I said in my brief in terms of New Jersey law that I'm aware of, that under those circumstances, he could have been convicted of purposeful murder. Giroir's testimony was crucial, I think, to the state's case of homicide. Absolutely. Of two killings. And the ability to examine him, cross-examine him with regard to any favorable treatment he got from the government was denied. That's absolutely correct. And he is the one who put the gun in Ali's hands, and he is the one who said Ali shot and killed Nathan Johnson. But how does that affect all the other charges, especially burglary, robbery? Holmes was convicted of robbery, and he was just sitting in the van. Right. And on the other hand, Gina Bozeman was charged with murder, and they used her van, and she was found not guilty of everything except for hindering apprehension. She had a very good lawyer. So, well, she did, and I don't deny that. But the fact is that there's an entire scale of offenses that these defendants could have been found guilty of, and the fact that any one of them was involved in this didn't make them guilty of purposeful murder. I may have misheard, but I thought, in response to Judge Fuentes' question just now, that you were saying that the defense was denied any opportunity to cross-examine Terrell about his cooperation with the authorities. In fact, the only limitation we're talking about is with the federal authorities on an agreement that had not yet been reached. As to the remainder of cross-examination and that Vanarsdale factor, that is the extent of cross-examination that was permitted, here there was extensive cross-examination. What wasn't there? About his credibility, his cooperation with the state authorities, the reduction in his sentence, various versions of the story that he had been given. He went so far as to repeatedly acknowledge that he had lied under oath. Under those circumstances, where he said he told half lies and half didn't lie, the extent of impeachment, that Vanarsdale factor seems to favor the government, not Petitioner in this case, doesn't it? Well, that's only one of the four factors. But the other factors also include the strength of the government's case, which we've touched on, the importance of this evidence to the government's case, and this particular evidence, that is what was withheld, seems fairly insubstantial relative to the remainder of the government's case in chief. Well, in regard to the question about was there an agreement, at the remand hearing, Terrell said that the only reason he didn't get a lawyer in relation to the federal charges was because he had an understanding with the FBI agents that as long as he continued to cooperate, that he would not be charged with anything, and in fact he wasn't. He got immunity on the federal charges and he was never charged with the crimes in either New York State or Maryland. You've made the case and pointed us to some authority for additional impeachment evidence being material, but following up on the question that you heard from Judge Roth, aren't we really dealing with a different question? This is not a matter of being inequipoise, particularly after IALA, we need to consider the no fair-minded jurist standard, something that the court has articulated as a very high standard. The state court decision is not unreasonable if fair-minded jurists could disagree on its correctness, and Petitioner must show that the state court's decision to reject his claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of a fair-minded disagreement. How can you, even showing that their reasonable minds might differ, how can you get over that standard? Fair-minded jurists would not assume or say that simply because somebody was involved in a crime that the jury could find them guilty of purposeful or annoying murder. That's basically, in the criminal justice system, that's really one of the main things that we do. A lot of the defendants that we represent are in fact guilty of something. Our job is to make sure that they are found guilty of only what they are deserving of being found guilty. And again, the fact that they've, I'm sorry, I didn't realize my light had come on. The fact that the state's case was based upon Terence Turrell, without, if the jury did not believe him, that basically the state had no case other than what was found in the van. All right. Thank you, Mr. Smith. Thank you very much. Come up to the microphone. I'm sorry. Just two points. Two minutes, I think. I know, but I don't need two minutes. With respect to the MAC-10, there was testimony from Mary Johnson as well that the person who was not Turrell had the MAC-10. So there was that evidence. It didn't just rely upon Turrell saying that the defendant had the MAC-10, which was the murder weapon. Mary Johnson said he had the, the guy with the net over his face had the M-10. Also, I think it's important to know that in terms of the knowing purposeful homicide count, the, when you say it may have made a difference to who was the shooter, again, Your Honor, it doesn't matter who the shooter is if the jury finds that they were an accomplice or a co-conspirator. The jury found defendant guilty of conspiracy to commit armed robbery as well, finding, therefore, that he knew that there were going to be weapons in the house. So it's hard to say that he's not guilty or at least knew that there could be a felony murder because the jury found that he went in, that he was part of a conspiracy, not just robbery, armed robbery. So that's a reason why we also believe that the felony murder convictions are not impacted by Judge Debevois' finding of a lack of cross-examination of Turrell in this one area. He was sentenced for a felony murder, wasn't he? Yes, he got 30 years or without parole, which is the minimum sentence for murder in New Jersey. Thank you, Your Honor. Okay, thank you very much. Thank you both for your excellent arguments. We'll take the case.